**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| **v.** | § | **No. 3:13-CR-013-L** |
| | § | |
| **MARCOS ANTONIO GARCIA** | § | **ECF** |

<u>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE WITH**</u>
<u>**MEMORANDUM, AND REQUEST FOR EVIDENTIARY HEARING**</u>

Pursuant to Rule 12b, Defendant Marcos Antonio Garcia (Garcia), by and through

Assistant Federal Public Defender John Nicholson (Counsel), respectfully files this suppression

motion and request for evidentiary hearing.  Garcia asks the Court to suppress  all evidence

derived from Garcia's March 6, 2012, warrantless search and seizure while he drove along a

Texas interstate highway.

Counsel submits that a Texas DPS Trooper unreasonably seized and searched Garcia in

violation of the Fourth Amendment when the trooper stopped Garcia's northbound travel on

Interstate 35N between the towns of West, Texas, and Waco, Texas. More specifically, Counsel

submits that:

(1)     the DPS Trooper lacked probable cause as a matter of law to
        conclude that Garcia had broken a Texas traffic law simply
        because Garcia was driving in the left-hand lane of the highway;
        and,

(2)     the DPS Trooper lacked any articulable facts giving rise to
        reasonable suspicion to suspect that Garcia had committed any
        offense as a result of Garcia's lawful travel in the highway's left-
        hand lane.

# I.

## The Evidenced to be Suppressed

Garcia asks this Court to suppress the following evidence which the Government discovered as a result of, and through the exploitation of, an illegal seizure and search:

(1)      Any written or recorded statements made by Garcia;

(2)      The substance of any oral statements made by Garcia before or after his arrest in response to interrogation by a person then known to be a Government agent which the Government intends to offer in evidence at trial; and,

(3)      Any other evidence, tangible or testimonial, discovered as a result of and through the exploitation of the illegal seizure and search, including any evidence derived indirectly through exploitation of the fruits of the primary illegality.

# II.

## Statement of Facts

*The Genesis of an Interstate Traffic Stop*.

On March 6, 2012, during the daylight hours, Department of Public Safety (DPS) Trooper Ladd ("Trooper Ladd") drove his patrol car onto northbound I-35 roughly 15 miles south of the town of West, Texas.  The patrol car's dashboard camera was on despite the fact that, by all appearances, Trooper Ladd had not activated his car's emergency lights.[1]  Roughly thirty seconds after entering the northbound highway, Trooper Ladd moved into the highway's leftmost lane.  At this section of the highway, the interstate consisted of three northbound lanes with concrete

---

[1] Exhibit A is the dashboard video, which will be provided to Judge Lindsay and the U.S. District Clerk.  Much of the factual recitation reflects the events captured upon this video.

barriers along each side.  Trooper Ladd drove slowly enough that, roughly one minute into his trip, a pick-up truck that was driving in the right lane passed him.

Roughly sixty seconds later, Trooper Ladd moved his patrol car from the left-most lane into the center lane. Almost immediately at that point, the center lane and the right-most lanes merged and Trooper Ladd continued on in the right lane of the now two-lane northbound highway.  Trooper Ladd continued northbound on I-35 for roughly nine minutes (and some 11 miles) before the dashboard camera showed the white pickup truck (Garcia's truck) appear in the left-hand lane and slowly overtake the DPS sedan.

### A Series of Non-Stops.

But before focusing on Garcia's truck, Trooper Ladd witnessed no less than 20 other cars and trucks pass the Trooper's sedan on his left, only two of which pulled into the right hand lane in front of Ladd after passing him.[2]  Trooper Ladd did not detain any of those 20 vehicles even though 18 of them passed him on his left and continued driving along (in) the highway's left lane.[3]  After seeing Garcia's truck pass him to his left, Trooper Ladd witnessed a silver minivan follow behind Garcia and also pass the Trooper's sedan on the left side.[4]

In sum, Trooper Ladd chose not to detain: (1) any of the 18 vehicles which passed the Trooper's DPS sedan before Garcia's truck did so or; (2) the one vehicle (the silver minivan) which passed his sedan after Garcia did so.  This, despite the fact that all 19 of those cars and

---

[2]  *See* Exhibit A (Dashcam) at 2:57 - 9:55.

[3]  *Id*.

[4]  *See* Dashcam at 11:11, 12:33.

trucks had, like Mr. Garcia, passed Trooper Ladd on the left without subsequently pulling in front of him.

***Garcia's Seizure.***

Roughly 30 seconds after first seeing Garcia pass by him in the left lane, Trooper Ladd increased his speed.[5]  He overtook the silver van (that had moments earlier passed Trooper Ladd on the left) and drew closer to Garcia's truck.[6]  The trooper drove his sedan up to a point just behind and to the right of Garcia's truck.[7]  Indeed, as the tape reveals, the spacing was such that, had he even been so inclined to do so, Garcia could not have moved back into the right lane without likely having collided with Trooper Ladd's patrol vehicle.[8]

At roughly the 90-second point from first seeing Garcia's truck, Trooper Ladd moved his sedan from the right lane into the left lane, thereby positioning himself directly behind Garcia's truck and placing himself in front of the silver minivan.[9]  Responding to Trooper Ladd's obvious direction to pull over, Garcia immediately moved his truck to the right shoulder and Trooper

---

[5]  *See id*. at 11:22.

[6]  *See id*. at 11:25.

[7]  *See id*. at 11:35.

[8]  *See id*. at 11:30

[9]  *See* Dashcam at 12:20.

4

Ladd fell him behind him.[10]   Trooper Ladd actually detained Garcia near the Exit 353 sign, just

south of West, Texas.[11]

### *The Alleged Offense of "Driving in The Left lane not Passing."*

At the 12:43 mark of the dashboard video, the audio recorder (presumably on Trooper

Ladd's uniform) activated.  The audio recorded Trooper Ladd twice explaining to Garcia that he

stopped Garcia for the offense of "driving in left lane not passing."[12]  This "Driving in the Left

Lane not Passing" explanation was repeated in the corresponding Texas Department of Public

Safety Investigative Report and again in Report Nos. 12 and 13 of the corresponding Department

of Homeland Security Reports of Investigation.  The corresponding Texas Department of Public

Safety Offense Report lists the basis of the stop as "Driving in the left lane not passing where

prohibited."

### *The Ensuing "Consent" and Search.*

After informing Garcia of the proffered reason for his detention and seizure, Trooper

Ladd eventually secured Garcia's consent to search.[13]  Hours later, officers discovered roughly 11

kilograms of methamphetamine secreted in the truck's muffler; Garcia also made various

incriminating statements.

---

[10]   *Id.*

[11]   *See id.* at 12:38.

[12]   *See id.* at 13:03, 14:03.

[13]   *See id.* at 20:00, 26:30.

5

### III.

### The Relevant Law

*Fourth Amendment Considerations*.

The Fourth Amendment prohibits unreasonable searches and seizures.[14]  This prohibition applies to vehicle stops and the detention of its occupants.[15]  A law enforcement officer may legally stop a vehicle only when there is probable cause to do so or the officer has a reasonable suspicion that the occupant of the vehicle is engaged in or is about to be engaged in criminal activity.[16]  Furthermore, the legality of a traffic stop must be justified at its inception.[17]  Notably, the Fifth Circuit has explained that if "the alleged traffic violation forming the basis of the stop was not a violation of state law, there is not objective basis for justifying the stop."[18]

*Vehicle Stops based on Probable Cause.*

---

[14]   The defense has adopted much of the argument in this motion from the well-reasoned, efficient opinion of the Honorable U.S. District Judge Mary Lou Robinson in the case United States v. $99,980, No. 2:10-CV-0247-J (included with this motion as Exhibit B).

[15]   United States v. Shabazz, 993 F.2d 431 (5th Cir. 1993).

[16]   See, e.g., United States v. Breeland, 53 F.3d 100 (5th Cir. 1995); United States v. Tellez, 11 F.3d 530 (5th Cir. 1993).

[17]   United States v. Pack, 612 F.3d 341, 350 (5th Cir. 2010).

[18]   United States v. Raney, 633 F.3d 385, 390 (5th Cir. 2011).

A vehicle may be lawfully stopped by a law enforcement officer only when there is probable cause to stop the vehicle, or, lacking probable cause, when the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot."[19]  Probable cause must be determined under an objective standard.[20]  It exists only when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest and/or search are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.  In short, probable cause cannot be established simply by showing that the police subjectively believed that the same existed.[21]

***Vehicle Stops based on Terry Reasonable Suspicion.***

A stop based upon reasonable suspicion is typically referred to as a *Terry* stop. Such a stop permits law enforcement officers to stop persons and briefly detain them in order to investigate a reasonable suspicion that such persons are involved in criminal activity.[22]  The criminal activity referenced in *Terry* has been held to include traffic violations, however minor.[23]

---

[19]  See United States v. Breeland, 53 F.3d 100, 102 (5th Cir. 1995).

[20]  See, e.g., United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995); United States v. Barlow, 17 F.3d 85, 89 (5th Cir.).

[21]  See United States v. Ho, 94 F.3d 932 (5th Cir. 1996); United States v. Cooper, 949 F.2d 737 (5th Cir. 1991).

[22]  See, e.g., United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990); United States v. Alvarado-Ramirez, 975 F.Supp. 906, 911 (W. Dist. Tex. 1997).

[23]  See, e.g., Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (motorist stopped for expired license plate);  United States  v. Kelley, 981 F.2d 1464 (5th Cir. 1993) (motorist stopped for seatbelt violation).

When an automobile is stopped pursuant to probable cause or reasonable suspicion, any resulting warrantless search of the car is impermissible under the Fourth Amendment unless supported by either probable cause to search or an untainted, valid consent for the search.

***Evidentiary Exclusion.***

Where a Fourth Amendment violation has occurred, the exclusionary rule mandates the suppression of not only all evidence obtained in the illegal search or seizure itself; it also requires the suppression of all evidence obtained as a result of, or derivatively from, the illegally seized evidence, because such evidence is nothing more than "fruit of the poisonous tree."[24]  Under this doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation.[25]

## IV.

## Application of Law to This Case

At the moment Trooper Ladd signaled to Garcia to pull over, he made it plain to Garcia that he was stopping him. Under well-settled law, Trooper Ladd's proffered reasons for stopping and seizing Garcia fail as a matter of law and fact to provide the requisite probable cause or

---

[24]   See Wong Sun v. U.S., 371 U.S. 471 (1963). See also United States v. Pack, 612 F.3d 341, 347 (5th Cir. 2010)("The exclusionary rule allows a defendant to suppress the evidentiary fruits of a violation of his Fourth Amendment rights.")(citation omitted).

[25]See Brown v. Illinois, 422 U.S. 590 (1975); United States  v. Miller, 146 F.3d 274 (5th Cir. 1998).

reasonable suspicion needed to justify Garcia's seizure and the ensuing search of his car.  First,

Trooper Ladd's proffered justification for the stop does not amount to a violation of law: Texas

does not criminalize motorists who drive in the left lane of a highway without passing. Second,

even if Trooper Ladd had stopped Garcia for having *possibly* disregarded an earlier traffic sign

that prohibited driving in the left lane except for passing, the trooper articulated no facts to give

rise to any objective suspicions that Garcia was even on the interstate so as to observe–much less

disregard– any such sign.

> ***Officer Ladd lacked probable cause to conclude that Garcia had
> committed an offense because Texas does not criminalize driving
> in the left lane without passing.***

Trooper Ladd could not lawfully have stopped Garcia for "driving in the left lane not

passing" because such driving does not give rise to an offense in the first place. This is not

Garcia's conclusion; rather, it is the conclusion of any number of federal jurists within this

circuit. As the Honorable United States District Judge Cardone found in a case similar to the one

at hand, "[d]espite the government's assertions, there is no general rule prohibiting driving in the

left lane of an interstate highway without passing."[26]  Furthermore, in the Northern District of

Texas, United States District Court Judge Robinson has adopted Judge Cardone's finding and

concluded "that there is not a general prohibition against driving in the left-hand lane of a

highway in Texas."[27]

---

[26]  United States v. Jackson, 2010 U.S. Dist. LEXIS 110898, *9 (W.D.L.A. 2010)
(Enclosed as Exhibit C).

[27]  United States v. $99,980, No. 2:10-CV-0247-J, pg 2.

9

To be sure, the Texas Transportation Code § 544.011 does provide that "[i]f, on a highway having more than one lane with vehicles traveling in the same direction, the Texas Department of Transportation or a local authority places a sign that directs slower traffic to travel in a lane other than the farthest left lane, the sign must read 'left lane for passing only.'" And, it is also true that § 544.044 requires motorists to "comply with an applicable official traffic control device." But as noted by the above-mentioned federal jurists, these provisions do not carve out a criminal offense upon which to justify a finding of probable cause.  And absent such probable cause, any attendant  seizure was unreasonable as a matter of law and compelled suppression of the evidentiary fruits.

Indeed, the Fifth Circuit made this very point when, in United States v. Miller,[28] the court concluded that "driving with one's turn signal on but not actually turning" did not qualify as a Texas offense. The court concluded that a seizure predicated upon an officer's mistaken beliefs about a "non-offense" lacked requisite probable cause and compelled suppression of evidence. Noting that "[i]t should go without saying that penal statutes are to be strictly construed," the court refused to adopt the Government's strained reading of the proffered Texas statutes and consequently refused to find probable cause by which to justify Miller's seizure and the ensuing vehicle search.[29]

---

[28] United States v. Miller, 146 F.3d 274 (5th Cir. 1998).

[29] Miller also provides critical instruction concerning the treatment–and ultimately the irrelevance–of Garcia's "consent" to search in the instant case because of the lack of any causal break between the constitutional foul and the evidence gleaned. See id. at 279-80. Garcia submits that this Court's application of the same "consent" analysis used in Miller will demonstrate that Garcia's consent to search was equally tainted. The Miller court noted that Miller's "consent" to the search was of no consequence because it was itself a product of the constitutional violation:

As the circuit as instructed, to be lawful for Fourth Amendment purposes, a traffic stop must be lawful at its inception.[30]  But Garcia's traffic stop was not lawful at its inception because Trooper Ladd unlawfully detained him for committing a non-existent offense.  At the time of this stop, there was no law, ordinance, or other regulation permitting Trooper Ladd to stop Garcia for the proffered basis.  Thus, regardless of whatever subjective reason or reasons may have motivated Trooper Ladd to seize Garcia, the government may not characterize as "objective" the

---

Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation. *See Brown v. Illinois*, 422 U.S. 590, 597–603, 95 S.Ct. 2254, 2259–2261, 45 L.Ed.2d 416 (1975) (discussing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)); *United States v. Cherry*, 759 F.2d 1196, 1210–11 (5th Cir.1985). The burden on the prosecution to show that consent to a search was voluntary is significantly heavier when it follows a constitutional violation. *See Cherry*, 759 F.2d at 1210–11. The analysis that must be undertaken in this situation is explained in *United States v. Chavez–Villarreal*, 3 F.3d 124, 127–28 (5th Cir.1993) (citing *Brown*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416):

> Even though voluntarily given, consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will. To determine whether the causal chain was broken, we consider: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. The burden of showing admissibility rests on the government.

Garcia submits that his consent was itself a sought-after product of the unconstitutional seizure and search and that, under Brown, Cherry, Chavez-Villareal, and Miller, his consent to search does not cure or excuse the constitutional foul.

[30]   Pack, 612 F.3d at 350.

reason offered by Trooper Ladd because if "the alleged traffic violation forming the basis of the stop was not a violation of state law, there is not objective basis for justifying the stop."[31]

> **Even if Trooper Ladd had stopped Garcia for having *possibly* disregarded an earlier traffic sign that prohibited driving in the left lane except for passing, the trooper articulated no facts sufficient under *Terry* that Garcia was ever in a position on the interstate to have observed–much less to have disregarded–any such sign.**

The video recording of the seizure and search establishes as a matter of law that Trooper Ladd articulated no facts sufficient to justify even a *Terry* investigative stop. Garcia's seizure and search cannot be justified on that basis. Furthermore, any argument that Trooper Ladd stopped Garcia not for driving in the left lane but rather for violating a law requiring compliance with an earlier traffic sign, would also fail to satisfy *Terry*. The already-documented facts bear this out.

Texas code § 544.044 requires motorists to "comply with an applicable official traffic control device." But obviously, before a person can "comply" with any such device (or sign), the person must be aware of it in the first place. Here, not only did Trooper Ladd lack reasonable suspicion that Garcia had violated § 544.044, it was factually, and thus legally, impossible for him to have had as much.

Garcia's truck first appears on Trooper's Ladd's dashboard camera video at the 10:56 mark. Trooper Ladd followed behind and to the right of Mr. Garcia's truck for 88 seconds before pulling him over. In these 88 seconds, both Mr. Garcia and Trooper Ladd pass roughly nine traffic control devices (signs).[32]  None of these  read "left lane for passing only." (Such signs in

---

[31]  <u>Raney</u>, 633 F.3d at 390.

[32]  It is difficult to make an exact count because it appears that many of the signs in the video apply not to motorists on the highway, but rather to motorists entering or exiting the

Texas are rectangles, with black lettering on a white background.[33]) None of the traffic control devices that Trooper Ladd witnessed Mr. Garcia pass are signs of this nature.

Thus, during this interval, it was impossible for Trooper Ladd to have seen Garcia disregard a traffic control device reading "left lane for passing only" because, during the entire time Trooper Ladd saw Garcia, there simply was no such device for Garcia to disregard. To have lawfully detained Mr. Garcia for disregarding a traffic device, the traffic device in question must have been legible: they (traffic devices of this nature) "may not be enforced against an alleged violator if at the time and place of the alleged violation the device is not in proper position and sufficiently legible to an ordinarily observant person."[34]   In this case, not only was the purported traffic device not "in a proper position and sufficiently legible," it did not even exist.

Even if Trooper Ladd *had* witnessed Garcia pass, and disregard, a traffic device that required him to drive in the left lane only when passing another motorist, those observations would not have created a reasonable suspicion that criminal activity was afoot.  The dash cam video reveals that, had Garcia passed such a sign during the relevant 88 seconds, his conduct would have *complied* with its instructions. For the 88 seconds that Trooper Ladd waited before detaining Garcia, the video shows that Garcia: 1) drove in the left lane while overtaking Trooper Ladd (who was in the right lane), and 2) drove in the left lane to overtake a silver compact (that was in the right lane) that exited just as Mr. Garcia passed it, and 3) drove in the left lane to

---

highway by way of an on or off ramp.

[33]   An example of which is enclosed as Exhibit D, which may be found at http://www.txdot.gov/txdot_library/newsletters/txdot_update/2012/102912.html.

[34]   Texas Transportation Code §544.044(b).

overtake an eighteen-wheeler (that was in the left lane) and would have done so but for being detained by Trooper Ladd.[35]  Had Trooper Ladd witnessed Garcia pass such a traffic device, then either Garcia would have been in compliance with it or Trooper Ladd would not have given Garcia sufficient time to comply with it.[36]  And lastly, for the majority of those 88 seconds, Trooper Ladd drove his patrol vehicle so close Garcia's truck that he precluded Garcia from pulling into the right lane.

## V.

### Request for an Evidentiary Hearing

Once a defendant has shown that evidence is the product of a warrantless search or seizure, he is entitled to the suppression of the evidence unless the government can justify its acquisition.[37]  Further, a defendant is entitled to an evidentiary hearing if he or she alleges facts that, if true, would warrant relief.[38]  Trooper Ladd seized Garcia without a warrant.  The

---

[35]  See United States v. $99,980, pg 2 ("Additionally, the officer observed Phipps traveling in the left-hand lane for less than two miles, during which time Phipps passed at least one vehicle (the officers))".

[36]  See Jackson, 2010 U.S. Dist. LEXIS at *9 ("That Trooper Allick pulled Defendant over only six seconds after passing the sign, having already followed the car for one mile, is suspect, and calls into question the basis for the stop.  Six seconds is barely enough time for the driver to correct his legal position to comply with the requirements of the sign").

[37]  United States v. De La Fuente, 548 F.2d 528, 533 (5th Cir. 1977); United States v. Chavis, 48 F.3d 871, 872 (5th Cir. 1995); United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000); United States v. Runyan, 275 F.3d 449, 456 (5th Cir. 2001); United States v. Brathwaite, 458 F.3d 376, 380 (5th Cir. 2006).

[38]  See United States v. Garza, 429 F.3d 165, 172-173 (5th Cir. 2005); United States v. Powell, 354 F.3d 362, 370 (5th Cir. 2003); United States v. Mergist, 738 F.2d 645, 648 (5th Cir. 1984); United States v. Harrellson, 705 F.2d 733 (5th Cir. 1983); United States v. Smith, 546 F.2d 1275 (5th Cir.1977); United States v. Poe, 462 F.2d 195 (5th Cir.1972).

government must introduce evidence that justifies the seizure.  Garcia respectfully requests an

evidentiary hearing.

Respectfully submitted,

*/s/John M. Nicholson*
John M. Nicholson
Assistant Federal Public Defender
Northern District of Texas
Texas Bar No. 24013240
525 Griffin Street, Suite 629
Dallas, Texas 75202
214.767.2746
214.767.2886 (facsimile)
john_nicholson@fd.org
Attorney for Mr. Marcos Antonio Garcia

## <u>CERTIFICATE OF CONFERENCE</u>

I, hereby certify that, I, John M. Nicholson, attorney for defendant, attempted to confer with Lisa Miller, the Assistant United States Attorney assigned to this matter but she was unavailable.  However, it is reasonable to assume that the government is opposed to the relief requested in this motion.

/s/  John Nicholson
John Nicholson

## **CERTIFICATE OF SERVICE**

      I, John Nicholson, hereby certify that on June 10, 2013, I electronically filed the foregoing Motion to Suppress Evidence with the Clerk for the U.S. District Court, Northern District of Texas, using the electronic filing system for the court.  The electronic case filing system sent a "Notice of Electronic Filing" to AUSA Lisa Miller, lisa.miller@usdoj.gov, who has consented in writing to accept this Notice as service of this document by electronic means.

                                  /s/  John Nicholson

                                  John Nicholson